IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 13, 2013

**JAMES D. BEAIRD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2004B1800     Mark. J. Fishburn, Judge**

———————————

**No. M2013-00446-CCA-R3-PC - Filed January 23, 2014**

———————————

The Petitioner, James D. Beaird, appeals the Davidson County Criminal Court's denial of post-conviction relief from his conviction for first degree felony murder and attempted especially aggravated robbery. On appeal, the Petitioner argues that he received ineffective assistance of counsel based upon allegations that Counsel failed to exclude or introduce certain evidence at trial and failed to conduct a reasonable investigation prior to trial. Additionally, he asserts that the cumulative errors made by Counsel entitle him to relief. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Jeremy W. Parham, for the Petitioner, James D. Beaird.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This appeal stems from the shooting death of George McLaurine, Jr. on the evening of March 25, 2004. The Petitioner was implicated in Mr. McLaurine's death, and subsequently indicted for first degree felony murder and attempted especially aggravated robbery.

**Facts.** This court summarized the underlying facts of this case on direct appeal as follows:

The victim's mother, Mrs. McLaurine testified that her son, the victim, came home and gave her a gift and card for her birthday on March 25, 2004. Around 7:00 p.m., the victim, while talking on his cell phone, stopped and told Mrs. McLaurine that he was leaving the house. Mrs. McLaurine heard the door slam and then she heard gunshots. Mrs. McLaurine went over to the window and saw a man with the victim. The man was "shooting down at the ground." At this time, Mrs. McLaurine ran out of the house onto the front porch and asked the man, "Why are you shooting at my son?"

Mrs. McLaurine testified that the man told the victim to take off his pants. She did not understand the man's request, and again, told the man not to hurt her son. The man then pointed the gun at her and told her, "[Y]ou better get back in the house or I will shoot you." The victim then walked towards the house and said, "Momma, go back in the house, go back in the house." According to Mrs. McLaurine, everyone went back into the house including the gunman. At one point, she was able to get a good look at the man as he stood underneath the porch light. The man kept the gun pointed on them as he walked into the house. Mrs. McLaurine recalled that she stood in front of the victim and asked the man not to shoot her son. However, when the man pointed the gun at her and said he would kill her, the victim intervened and pushed her behind a door to the den and closed the door. Mrs. McLaurine then heard her husband tell the victim to take off his pants and give them to the man. She then heard another gunshot. Mrs. McLaurine returned to the front room and saw the victim lying on the floor "gasping for breath." Her husband told her to call 911 and then he ran outside after the man. Mrs. McLaurine called 911 and told the dispatcher what happened. The victim was rushed to the hospital, but he died shortly thereafter.

State v. James D. Beaird, No. M2006-01931-CCA-R3-CD, 2008 WL 425923, at *1 (Tenn. Crim. App. Feb. 15, 2008), perm. app. denied (Tenn. Aug. 25, 2008).

The Petitioner and co-defendant Shayla Bryant were soon arrested and indicted for their involvement in the death of the victim. Following the shooting, Mr. And Mrs. McLaurine were shown a number of photographic lineups in an attempt to identify the perpetrator. Eventually, Mrs. McLaurine was shown a photographic lineup with the Petitioner's photograph included in the lineup. She positively identified the Petitioner as the man who shot her son. Mr. McLaurine was unable to make a positive identification from any of the photographic lineups, but identified the Petitioner as the shooter at the Petitioner's

-2-

preliminary hearing. Co-defendant Bryant testified against the Petitioner at the Petitioner's trial. She testified that she and the Petitioner agreed to rob the victim because the victim owed her money. She explained that she arranged to meet the victim at his parents' home on the evening of the shooting, and that she dropped the Petitioner off at that location to rob the victim. She testified that she did not know that the Petitioner would shoot the victim, and only helped the Petitioner escape the scene after the shooting because he threatened to kill her. During cross-examination, she acknowledged lying to the police on several occasions about her involvement in the victim's death. She admitted telling police that the victim sold drugs and that someone might have killed the victim over some fake drugs sold by the victim. However, she maintained that her testimony at trial was the truth.

The jury found the Petitioner guilty of attempted especially aggravated robbery and first degree felony murder. James D. Beaird, 2008 WL 425923, at *7. He received a sentence of twelve years imprisonment for especially aggravated robbery, to be served consecutively to his a sentence of life imprisonment for first degree felony murder. This Court affirmed the judgments of the trial court on direct appeal. James D. Beaird, 2008 WL 425923, at *16.

On February 10, 2009, the Petitioner filed a timely pro se petition for post-conviction relief, alleging numerous instances of ineffective assistance of counsel. The Petitioner was subsequently appointed counsel, and an evidentiary hearing was held on March 20, 2012.

**Post-Conviction Hearing.** At the post-conviction hearing, the Petitioner testified on his own behalf and the State called the Petitioner's trial counsel ("Counsel"). The Petitioner testified with regard to several areas in which he believed Counsel had provided ineffective assistance of counsel. He testified that Counsel's questioning of several witnesses was "immature," and was not to the Petitioner's "liking . . . as far as . . . helping [the Petitioner] have a fair trial." He further testified that he told Counsel about two potential witnesses, Tia and Phyllis Gant, that could testify on his behalf, but that Counsel never contacted these witnesses to his knowledge. Similarly, the Petitioner maintained that Counsel was ineffective for failing to investigate and speak with a woman known only as "Rosa," who allegedly had information of another person that had a motive to kill the victim. He explained that he learned of Rosa during discovery and told Counsel about her. He stated that Counsel told him that Rosa "didn't materialize." None of these potential witnesses testified at the post-conviction hearing.

The Petitioner complained that Counsel was unable to exclude a 911 phone recording made by the victim's mother. The Petitioner agreed that Counsel strenuously objected to its admission and "tried everything he could" to have it excluded, but stated that Counsel was unsuccessful and "a good lawyer" would have been able to keep it out. Similarly, the

Petitioner asserted that Counsel failed to suppress the photographic identification of the Petitioner made by the victim's mother. He believed that it should have been excluded because the police "could have led her to [pick the Petitioner]." The Petitioner also complained that Counsel was unable to introduce into evidence the victim's history of drug dealing, which the Petitioner maintained could have provided a motive for someone else to murder the victim.

The Petitioner testified that he believed Counsel did not question co-defendant Shayla Bryant "good enough," especially with respect to the various stories she initially told police about the victim's murder and his involvement with drugs and drug dealing. The Petitioner asserted that the State did not have any physical evidence to tie him to the crime and that Counsel failed to "properly investigate" his case to determine whether there were any other witnesses to support the theory that another person had the motive to kill the victim. He acknowledged that he did not have any witnesses to testify at the post-conviction hearing in support of that theory.

Counsel testified that he was appointed to represent the Petitioner "very early on" in the Petitioner's case, soon after he was arrested. He recalled that he met with the Petitioner "a couple dozen times over a period of two years" and that he, along with co-counsel and an investigator, spent a lot of time on the case. He stated that the investigator met with the Petitioner at least one time to "see what investigation needed to be done." He also testified that he "absolutely" discussed the State's evidence and shared the discovery materials with the Petitioner. Counsel recalled mention of a potential witness named Tia Gant and stated that either he or his investigator attempted to contact her, although he could not recall any details. Counsel stated that he had no recollection of a woman named Rosa, but testified that he and his investigator reviewed all discovery materials and attempted to contact and interview all potential witnesses.

Counsel testified that he and co-counsel had multiple discussions about possible defenses in the Petitioner's case. He explained that he and co-counsel believed the strongest defense was to attack the underlying felony, attempted robbery; however, the Petitioner wanted to pursue an identification defense. Counsel testified that he tried to "convince [the Petitioner] that [the identification defense] really was not going to be a winning defense," but the Petitioner wanted to pursue it so Counsel "respected his wishes." Counsel did not recall any other defense that the Petitioner wanted to raise or any other witnesses the Petitioner wanted to call. He testified that his team "tried to interview everybody that [the Petitioner] wanted [them] to," and stated that there were probably several witnesses that either they could not find or they interviewed and determined would not be helpful.

-4-

Following the hearing, the court took the matter under advisement and entered a written order denying the Petitioner relief on January 8, 2013. In relevant part, the court reasoned and concluded as follows:

> It is unclear to the court the meaning behind [the] Petitioner's claim that trial counsel were "immature" in their cross-examination of witnesses. And the Petitioner does not point to any particular area or specifically reference any questioning by counsel that may shed light on what he means. However, the court has reviewed the record and is satisfied defense counsel adequately challenged the testimony of the State's witnesses and in several important instances, was able to expose weaknesses in the State's proof or least raise questions as to how much weight should [be] afforded their testimony . . . The fact that trial counsel may have been polite, courteous or professional in their approach does not suggest immaturity. Absent any specific complaints as to the approach or breadth of counsel's cross-examination, the court is at a loss to see any deficiencies in counsel's efforts.
>
> [The] Petitioner next complains that trial counsel was ineffective in failing to locate, interview and present testimony of witnesses favorable to his defense. First, the court accredits the testimony of [Counsel] that every effort was made to locate and interview witnesses, but that those efforts did not produce any positive results. Second, the fact that [the] Petitioner failed to present any of these witnesses at the hearing makes this issue moot. "When a petitioner contends that trial counsel failed to discover, interview or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) . . . .
>
> Contrary to the Petitioner's claim that trial counsel failed to challenge the identifications, counsel did all that he could do. He had a full hearing to suppress the identifications which was denied by the court. He also cross examined the witnesses in detail about the identifications to expose the reliability of the identifications to juror scrutiny. It is unclear what else counsel was supposed to do.
>
> Finally, [the] Petitioner complains that defense counsel failed to present a viable alternative theory of defense to the one pursued. Ineffective assistance of counsel claims based on trial strategy and tactics do not generally provide a basis for post-conviction relief where counsel makes those decisions after adequate trial preparation. Taylor v. State, 814 S.W.2d 374, 378 (Tenn.

Crim App. 1991); Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). In this case, trial counsel made every effort to locate and interview witnesses, thoroughly reviewed all discovery with [the Petitioner], met with [the Petitioner] on numerous occasions, legally challenged the identifications by the witnesses, and was prepared to attack the credibility of the co-defendant with the many inconsistencies in her statements. The court is satisfied that trial counsel was more than adequately prepared.

. . .

For the reasons set forth above, the court concludes that [the] Petitioner has failed to establish that trial counsel provided ineffective assistance of counsel at trial[, and] the Petition for Post-Conviction Relief, therefore, is denied.

It is from this order that the Petitioner now appeals.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel. Specifically, he alleges that Counsel was ineffective for failing to exclude or introduce certain evidence at trial and failing to conduct a reasonable investigation prior to trial. Additionally, he asserts that the cumulative errors made by Counsel entitle him to relief. The State responds that the Petitioner failed to establish that he was denied effective assistance of counsel, and therefore, the post-conviction court properly denied relief. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

-6-

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner first asserts that Counsel provided ineffective assistance of counsel because he failed to exclude and introduce certain evidence at trial. He notes that the State had no physical evidence to tie him to the crime, and argues that Counsel's failures directly contributed to his conviction. Specifically, the Petitioner complains that Counsel failed to exclude a 911 recording made shortly after the victim was shot and a photographic identification made by the victim's mother. Additionally, he asserts that Counsel was unable to introduce evidence regarding the victim's history of drug dealing, which could have provided a motive for someone else to murder the victim.

To begin, we note that this Court, on direct appeal, concluded that the trial court erred in admitting the 911 tape.[1] See State v. James D. Beaird, 2008 WL 425923, at *9-10. Nevertheless, the post-conviction court concluded, and we agree, that Counsel's attempts to exclude the 911 tape were more than adequate. The record reflects that Counsel strenuously objected to its admission and attempted to have it excluded or, alternatively, greatly redacted so as to reduce its prejudicial impact. Indeed, during the post-conviction hearing, the Petitioner agreed that Counsel "tried everything he could to get the [911 recording] excluded," and could only point out that Counsel was unsuccessful in his attempts to have it excluded. Likewise, the Petitioner was unable to articulate what more Counsel could have done to exclude the photographic lineup, and asserted only that Counsel should have more adequately raised the issue that the victim's mother could have been influenced by police when she identified the Petitioner. This testimony is insufficient to establish deficient performance by Counsel. The post-conviction court found that Counsel held a full suppression hearing to try to suppress both the 911 recording and the photographic lineup, which the trial court denied, and that he thoroughly cross-examined the State's witnesses with regard to the identifications made. The record does not preponderate against these

---

[1] Notwithstanding the Court's conclusion that the trial court erred in admitting the 911 recording, the Court denied the defendant relief, concluding that "the error was harmless in that it did not undermine the fundamental fairness of the defendant's trial." James D. Beaird, 2008 WL 425923, at *10.

findings, and supports the post-conviction court's conclusion that Counsel was not deficient.

Additionally, the Petitioner complains that Counsel failed to introduce testimony of the victim's history of drug dealing to support an alternative theory of the crime, namely that the victim was murdered by another individual in retaliation for selling fake drugs. As an initial matter, we note that contrary to the Petitioner's claims, Counsel was successful in introducing several pieces of evidence about the victim's drug dealings. The record reflects that the trial court allowed Counsel to question co-defendant Bryant about her prior statements to police regarding the victim's fake drug sales and admitted into evidence drug paraphernalia found in the victim's room. The Petitioner provided no evidence or testimony to further support his alternative theory or indicate what more Counsel should have done in this regard. We fail to see how Counsel's performance was deficient. Moreover, the post-conviction court correctly noted that trial strategy and tactics do not generally provide a basis for post-conviction relief where counsel's decisions were based upon adequate preparation. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). The post-conviction court accredited Counsel's testimony that the Petitioner insisted upon pursuing an identity defense and found that Counsel adequately prepared and presented that defense at trial. The fact that it was unsuccessful or that Counsel freely admitted that he wished he would have pursued a different defense does not entitle the Petitioner to relief. See id. ("[E]very effort [must] be made to eliminate the distorting effects of hindsight[.]") (citing Strickland v. Washington, 266 U.S. 668, 689 (1984)). The record supports the post-conviction court's conclusion. The Petitioner is not entitled to relief.

The Petitioner next contends that Counsel provided ineffective assistance of counsel because he failed to conduct a reasonable investigation prior to trial. The Petitioner is particularly critical of Counsel's failure to call three potential witnesses at trial, and maintains that Counsel's failure to do so prejudiced his defense. In denying relief, the post-conviction court accredited Counsel's testimony that his team "made every effort to locate and interview witnesses, but that those efforts did not produce any positive results," and therefore, the court concluded that Counsel's performance was not deficient. The record does not preponderate against these findings. In any event, the post-conviction court correctly noted that the Petitioner has failed to carry his burden because he did not present any of these proposed witnesses at the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the post-conviction court nor this Court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Id. Therefore, because the Petitioner did not present any witnesses that

he alleged Counsel should have called at trial, he has failed to establish prejudice and is not entitled to relief.

Finally, the Petitioner argues that the cumulative effect of Counsel's errors denied him a fair trial and entitle him to relief. The cumulative error doctrine recognizes that in some cases there may be multiple errors committed during the trial proceedings, which standing alone constitute harmless error; however, considered in the aggregate, these errors undermined the fairness of the trial and require a reversal. State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). However, the cumulative error doctrine properly applies only where there has been more than one *actual error*. Id.; See also, Tracy F. Leonard v. State, No. M2006-0654-CCA-R3-PC, 2007 WL 1946662, at *21 (Tenn. Crim. App. Sept. 13, 2007) ("[A] Petitioner who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of such counsel's errors."). Because the Petitioner has failed to prove deficient representation on any issue, he cannot successfully claim that the cumulative effect of counsel's performance violated his constitutional rights. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authority an analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-10-